# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 17-cv-02081-RM-MJW

HEADWATERS BD, LLC,
a Delaware limited liability company,

    Plaintiff,

v.

LFG PARTICIPACOES SOCIETARIAS LTDA,
a/k/a LFG PARTICIPACOES SOCIETARIAS EIRELI,
a Brazilian limited liability company,

    Defendant.

---

# REPORT AND RECOMMENDATION ON
# PLAINTIFF HEADWATERS BD, LLC'S
# MOTION FOR DEFAULT JUDGMENT UNDER RULE 55(b)(2)
# OF THE FEDERAL RULES OF CIVIL PROCEDURE
# (DKT. #39)

---

    This matter is before the Court on Plaintiff Headwaters BD, LLC's ("Headwaters") Motion for Default Judgment Under Rule 55(b)(2) of the Federal Rules of Civil Procedure against Defendant LFG Participacoes Societarias LTDA a/k/a LFG Participacoes Societarias EIRELLI ("LFG"). [Dkt. #39]. Headwaters has moved for entry of judgment by default against LFG, alleging that it breached the June 1, 2015 contract between the parties, and ordering damages with statutory interest. In support of its motion, Headwaters submitted the Declaration of Philip W. Seefried, Jr. [Dkt. #39-2] which supports Headwaters' damages calculations. LFG has not appeared and has not responded to the instant motion. The Court held a hearing on this matter on February 6,

2019 at 1:30 p.m. [*See* Dkt. #42.] During the hearing, the Court heard the testimony of Philip Seefried, received documentary evidence, and heard argument of counsel for the Plaintiff.

The Court has reviewed all the adjudicative facts and considered the evidence presented at the February 6, 2019 hearing, and in all forms in Headwaters' motion, including the Amended Complaint [Dkt. #14], and the declaration and exhibits submitted with the motion. [Dkt. ##39-1—39-6.] Based on this evidence, the Court enters this Recommended Disposition pursuant to Fed. R. Civ. P. 72(b)(1).

Having considered the record as a whole, the Court recommends the following findings of fact and conclusions of law:

1. On August 30, 2017, Headwaters filed its Complaint, and subsequently filed its Amended Complaint ("Compl.") on November 14, 2017. [Dkt. #14]. The Summons was issued on November 15, 2017. [Dkt. #16].

2. In late November 2017, Headwaters initiated the process to serve LFG, a Brazilian entity, pursuant to the Inter-American Convention on Letters Rogatory ("the Convention"), which is the applicable service convention between the United States and Brazil. The required Court-executed forms for service of process under the Convention were issued by the Court on November 27, 2017. [Dkt. #19].

3. On November 1, 2018, Headwaters filed its Notice of Completed Service of Process Under the Inter-American Service Convention on Letters Rogatory (the "Notice"). [Dkt. #36].

4. As set forth in the Notice, Defendant LFG was served with the Summons and Amended Complaint under the Convention on March 13, 2018, and the Ministry of

Justice in Brazil transmitted the completed proof of service package to the Department of Justice's agent in the United States on September 11, 2018. [Dkt. #36].

5. LFG has failed to file an answer and it has not otherwise entered an appearance in this action.

6. On November 19, 2018, the Clerk of the Court properly entered default against LFG. [Dkt. #38].

7. Therefore, LFG is in default. Fed. R. Civ. P. 12(a)(1)(A)(i). Upon entry of default, the well-pleaded allegations of the Amended Complaint related to liability are taken as true. *See e.g., Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *see also Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (holding that district court erred by not accepting as true all factual allegations of complaint except those relating to damages); *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989) (noting that on default, well-pleaded allegations of complaint relating to liability are taken as true, although allegations relating to amount of damages are not); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (noting that the general rule is that default by defendants established their liability, but not extent of damages).

8. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because the matter involves an action between a U.S. plaintiff and a foreign defendant and the amount in controversy exceeds $75,000. [Compl. ¶ 3; 28 U.S.C. § 1332]. Under the terms of the contract at issue, LFG explicitly consented to personal jurisdiction and venue in the District of Colorado for disputes arising out of the contract.

[Compl. ¶ 5]. The contract is to be interpreted under Delaware law and the parties waived trial by jury. [Compl. ¶ 6].

9. Under Delaware law, to prevail on a breach of contract claim, a plaintiff must demonstrate (i) the existence of the contract, whether express or implied, (ii) the breach of an obligation imposed by that contract; and (iii) the resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

10. On June 1, 2015, LFG and Headwaters entered into a valid contract. [Compl. ¶ 9, 10; Dkt. #42-2]. Under the terms of the contract, Headwaters was to provide investment banking services to LFG and its affiliates and subsidiaries, and to act as LFG's exclusive financial adviser. [Compl. ¶ 11].

11. As part of its services under the contract, Headwaters was asked by LFG to locate potential investors who were willing to purchase Altus Sistemas de Automacao S.A. ("Altus"), a Brazilian affiliate of LFG. [Dkt. #42-1 ¶ 7].

12. In attempting to locate buyers for Altus, Headwaters provided extensive services on LFG's behalf under the contract beginning in June 2015. Headwaters assessed more than 490 potential buyers and contacted more than 350 potential buyers on a global basis. Based on these contacts, Headwaters executed 21 nondisclosure agreements with interested buyers, ultimately resulting in Altus receiving an Expression of Interest ("EOI") from a multi-national conglomerate to purchase 100% of Altus for $40 million. [Dkt. #42-1 ¶ 8; Dkt. #42-6].

13. Subsequent to receiving the EOI and offer from the potential buyer, LFG and Gerbase attempted to re-negotiate the contract with Headwaters, even requesting that Headwaters cancel a meeting with the buyer until the contract was re-negotiated.

4

LFG also delayed in hiring legal counsel for the proposed transaction and contacted the buyer and other potential buyers in violation of the exclusivity clause of the contract. [Dkt. #42-1 ¶ 9-10].

14. Ultimately, LFG's conduct led to an abandonment of the transaction triggering the abandonment fee under the contract. [Dkt. #42-1 ¶ 11; Dkt. #42-2, pg. 4].

15. LFG breached the terms of the contract by failing to pay the $750,000 abandonment fee relating to the $40 million offer relating to Altus. [Compl. ¶¶ 17, 24-30; Dkt. #42-1 ¶¶ 7-11].

16. In August 2016, LFG attempted to terminate the contract with Headwaters. [Dkt. #42-1 ¶ 12; Dkt. #42-4].

17. However, at the time, LFG had not met the termination provisions under the contract, namely that LFG was required to pay all outstanding fees before termination could become effective and a transaction involving a 70% percent ownership change in an LFG-related entity needed to have been consummated. [Dkt. #42-1 ¶ 14; Dkt. #42-2, pg. 6].

18. On August 30, 2017, Altus publicly announced that it had entered into a transaction with the investment arm of Banco Nacional de Desenvolvimento Economico e Social ("BNDES") whereby Altus bought back BNDES' stake in the company. [Dkt. #42-1 ¶ 15; Dkt. #42-7].

19. Headwaters had prior discussions with BNDES with respect to the previously-referenced EOI because BNDES was a shareholder of Altus. [Dkt. #42-1 ¶ 15].

20. The BNDES buy-back transaction constitutes a transaction covered by the terms of the contract. The term "Transaction" is defined broadly to include "any material recapitalization of the Company." [Dkt. #42-2, pg. 4]. The term "Company" is defined broadly to include the affiliates and subsidiaries of LFG, which includes Altus. [*Id.* at pg. 1].

21. Additionally, the contract contained a "tail provision" which covered any transaction between Altus and another party (including BNDES) that occurred "at any time prior to 36 (thirty six) months following termination of this engagement" where Headwaters "has had discussions [with the party] on behalf of the Company." [*Id.* at pg. 6].

22. With respect to transactions covered by the contract, the terms of the contract provide for a success fee equal to 6.5% of the transaction amount in U.S. dollars, with a minimum cash success fee of $1,250,000. [*Id.* at pg. 4].

23. LFG breached the terms of the contract by failing to pay the $1,250,000 minimum success fee relating to the recapitalization transaction between Altus and BNDES. [Dkt. #42-1 ¶ 15].

24. The contract provided for a monthly retainer fee of $10,000 per month. [Dkt. #42-2, pg. 4].

25. LFG breached the terms of the contract by failing to pay outstanding retainer fees that were due and owing in the amount of $50,000. [Compl. ¶¶ 15, 18, 33; Dkt. #42-1 ¶ 16].

26. Under the terms of the contract, Headwaters is entitled to its attorneys' fees and costs related to this matter, related to serving LFG with the Summons and

Amended Complaint in Brazil, and related to any efforts to collect on this Final Judgment. [Compl. ¶ 22; Dkt. #42-1 ¶ 17; Dkt. #42-2, pg. 7].

27. The attorneys' fees and costs currently due and owing are $61,261.70. [Dkt. #43].

28. Under Delaware law, a claim for anticipatory breach of contract or anticipatory repudiation requires a plaintiff to show "an outright refusal by [the defendant] to perform a contract or its conditions entitling '[the plaintiff] to treat the contract as rescinded.'" *CitiSteel USA, Inc. v. Connell Ltd. P'ship*, 758 A.2d 928, 931 (Del. 2000) (citation omitted). "Repudiation may be accomplished by words or conduct, but must be positive and unconditional." *Henkel Corp. v. Innovative Brands Hldgs., LLC*, 2013 WL 396245, at *8 (Del. Ch. Jan. 31, 2013 (internal quotations and citations omitted).

29. LFG repudiated the contract as of August 29, 2016 through its Notice of Engagement Termination which evidenced its positive and unconditional intent to terminate the contract. [Compl. ¶¶ 26, 29-30; Dkt. #42-1 ¶ 12; Dkt. #42-4].

30. Under Colorado law, a prevailing party may recover pre-judgment interest under C.R.S. § 5-12-102, except in actions brought to recover damages for personal injuries.

31. Pre-judgment interest is recoverable on a "mere breach of contract," with the eight percent annual rate commencing "from the time of the breach." *Mesa Sand & Gravel Co. v. Landfill*, 776 P. 2d 362, 364-65 (Colo. 1989); *see also*, *Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 826 (Colo. 2008); *Smith v. Mehaffy*, 30 P.3d 727, 732 (Colo. App. 2000).

32. Headwaters is entitled to an award of pre-judgment interest on $800,000 in damages amount accruing from August 29, 2016 (the date LFG repudiated the contract) through the date of entry of Final Judgment with respect to the abandonment fee and the outstanding retainer fees. The prejudgment interest from August 29, 2016 through February 13, 2019 on $800,000 totals $157,457.53.

33. Headwaters is also entitled to an award of pre-judgment interest on $1,250,000 in damages accruing from August 30, 2017 through the date of entry of Final Judgment with respect to the success fee. The prejudgment interest from August 30, 2017 through February 13, 2019 on $1,250,000 totals $145,753.42.

34. Plaintiff is not seeking prejudgment interest on the outstanding attorneys' fees and costs.

35. Headwaters is also entitled to an award of post-judgment interest pursuant to 28 U.S.C. § 1961 for any delinquent amounts accruing from the date of entry of a Final Judgment.

WHEREFORE, based on the foregoing:

I.

IT IS HEREBY RECOMMENDED that Final Judgment be entered in favor of Plaintiff against Defendant. Defendant is ordered to pay damages of $2,111,261.70, together with prejudgment interest thereon in the amount of $303,210.95. Defendant shall satisfy these obligations by paying these amounts within 14 days after entry of Final Judgment by certified check, bank cashier's check, or wire transfer to Capstone Headwaters, 1225 17th Street, Suite 1725, Denver, Colorado 80202, telephone (303) 572-6000. Payments shall be net of Brazilian taxes, fees and/or remittance costs. Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

II.

IT IS FURTHER RECOMMENDED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of any Final Judgment entered by the Court.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the**

**recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

SO RECOMMENDED, this 14th day of February, 2019.

BY THE COURT:

*N. Reid Neureiter*
United States District Magistrate Judge